# Exhibit "1"

IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

DISTRICT COURT
F I L E D

JUN 19 2013

SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY

Gerry G. Thames,
    Beneficiary of Roth Account Equity Trust
    Company, d.b.a. Sterling Trust Custodian,

          Plaintiff,

vs.

Brookside Title & Escrow, Inc.,
Debbie J. Stockton, d/b/a
Brookside Title Escrow, Inc.

and

Markel Evanston Insurance Company,
Policy No. MG-831136,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CJ-2011-3624

Post-Judgment Garnishment

---

## APPLICATION FOR HEARING TO DETERMINE INSURANCE COVERAGE

---

**COMES NOW** the Plaintiff, Gerry G. Thames, by and through his attorney of record, Glennella P. Doss, and in support of this *Application for Hearing to Determine Insurance Coverage*, would show the Court as follows:

1.    On February 20, 2013, the Honorable Rebecca B. Nightingale granted judgment in the instant matter in the amount of $120,000.00 against Defendant Brookside Title & Escrow, Inc., Tulsa County District Court Case No. CJ-2011-3624, *(See Exhibit A)*.

1

2.      On May 24, 2013, Plaintiff commenced garnishment proceedings against Garnishee Markel Evanston Insurance Company, through whom Defendants Brookside and Debbie Stockton, d/b/a Brookside Title Escrow, Inc., had an insurance policy which provided coverage for Errors and Omissions of Agent, *(See Exhibit B, Certificate of Coverage; and Exhibit C, Policy; both attached).*

3.      Defendants failed to advise and or issue Plaintiff with closing protection letter.

4.      On June 10, 2013, Garnishee Markel Evanston Insurance Company filed its *Answer / Affidavit,* stating claims are not covered by the policy of insurance.

5.      Plaintiff now requests that a hearing be set for purpose of determining insurance Policy No. MG-831136, Errors and Omissions coverage of Brookside Title and Escrow, Inc., the claims upon which Defendants have confessed.

**WHEREFORE, premises considered,** Plaintiff respectfully requests that the Court schedule a hearing in the instant matter at the earliest convenient date for the purpose of determining Markel Evanston Insurance Company's Policy No. MG-831136, coverage of the claims upon which Plaintiff prevailed.

Respectfully submitted,

Glennella P. Doss, OBA No. 2437
Doss Law Offices
Lansing Business Park
720 East Marshall
Tulsa, OK 74106
T - 918.582.0888
F - 918.592.0822
*Attorney for Plaintiff Gerry G. Thames*

2

## CERTIFICATE OF MAILING

This is to certify that on the _____ day of _____, 2013, I caused a true, correct and exact copy of the above and foregoing document to be served via U.S. mail with postage prepaid, electronic email, and/or facsimile transmission to:

Tim N. Cheek, Esquire
Cheek Law Firm, PLLC
311 North Harvey Avenue
Oklahoma City, OK  73102

*Attorney for Markel Evanston Insurance Company, Garnishee*

Glennella P. Doss

3

IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

Gerry G. Thames,                                          )
     Beneficiary of Roth Account Equity Trust       )
     Company, d.b.a. Sterling Trust Custodian,      )
                                 )
          Plaintiff,          .            )
                                 )
vs.                                                       )     Case No. CJ-2011-3624
                                 )     Judge Rebecca Brett Nightingale
Brookside Title & Escrow, Inc.,                           )
Brookside Title & Trust, Inc., and                        )
Brookside Title & Escrow, Ltd.,                           )
     All Oklahoma Corporations, and                 )
Debbie J. Stockton, individual, and                       )
First American Title Insurance Company, and               )
First American Title and Trust Company, and               )
First American Title and Abstract Company,                )
                                 )
         Defendants.              )

DISTRICT COURT
**F I L E D**

FEB 2 5 2013

SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY

## JUDGMENT

Before the Court is the *Offer to Confess Judgment* filed by Defendants Brookside Title &
Escrow, Inc., Brookside Title & Trust, Inc., Brookside Title and Escrow, Ltd., and Debra J.
Stockton, a/k/a Debbie J. Stockton ("Stockton"), jointly and severally ("Defendants") and the
*Acceptance of Confession of Judgment* filed by Plaintiff Gerry G. Thames on February 19, 2012.
The Plaintiff and Defendants now seek an entry of judgment against the Defendants pursuant to
12 O.S. 1101.

Before the Court, having reviewed the pleadings and the relevant legal authorities, and being
fully advised, finds that judgment should be entered against the Defendants as confessed and
accepted.

1

EXHIBIT
**A**

Plaintiff is granted judgment in amount of $30,555.81, as confessed by Defendants, Brookside Title & Escrow, Inc., Brookside Title & Trust, Inc., Brookside Title and Escrow, Ltd., and Debra J. Stockton, a/k/a Debbie J. Stockton, and as accepted by Plaintiff Gerry G. Thames, together with amounts of $89,444.19, judgment rendered in U.S. Northern District Bankruptcy Court Case No. 12-11881-M; Adversary proceeding No. 12-01071-M, and filed herein on 01/17/2013.

SO ORDERED this _____30____ day of February, 2013.

BY THE COURT:

*Rebecca Brett Nightingale*
REBECCA BRETT NIGHTINGALE
JUDGE OF THE DISTRICT COURT

Approved for Entry:

Glennella P. Doss, Esquire, OBA No. 2437
Doss Law Offices
Lansing Business Park
720 East Marshall
Tulsa, OK 74106
T - 918.582.0888
F - 918.592.0822
*Attorney for Plaintiff Gerry G. Thames*

2

## CERTIFICATE OF MAILING

This is to certify that on the 25 day of __February__ , 2013, I caused a true, correct and exact copy of the above and foregoing document to be served via U.S. mail with postage prepaid, electronic email, and/or facsimile transmission to:

Michael D. Parks, OBA #6904
10 E. Washington, Suite 102
P. O. Box 3220
McAlester, OK  74502-3220

Mark W. Kuehling, Esquire
Kuehling Sexson, P.C.
1601 NW Expressway, Suite 650
Oklahoma City, OK  73118-1460

Glennella P. Doss

I, Sally Howe Smith, Court Clerk, for Tulsa County, Oklahoma, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears on record in the Court Clerk's Office of Tulsa County, Oklahoma, this

FEB 25 2013

Deputy

3

145443  Debbie Stockton dba Brooksidetitle Title and Escrow Inc.     Certificate of Insurance (page 1 of 1)     07/16/2010 10:17:56 AM

# ACORD CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
7/16/2010

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: |
|---|---|
| BusinessInsuranceNow | PHONE (A/C, No, Ext): (800) 655-1714    FAX (A/C, No): (972) 390-3484 |
| 1301 Central Expy. South, Suite 115 | E-MAIL ADDRESS: |
| Allen, TX 75013 | PRODUCER CUSTOMER ID #: |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A : Hiscox - Lloyd's | 00000 |
| Debbie Stockton dba Brooksidetitle Title and Escrow Inc. | INSURER B : | |
| 7335 South Lewis Ave. STE. 300 | INSURER C : | |
| Tulsa, OK 74136 | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | | |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ SCHEDULED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | ☐ HIRED AUTOS | | | | | | | |
| | ☐ NON-OWNED AUTOS | | | | | | | $ |
| | ☐ UMBRELLA LIAB  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DEDUCTIBLE | | | | | | | $ |
| | ☐ RETENTION  $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y / N | | | | | | ☐ WC STATU-TORY LIMITS  ☐ OTH-ER | | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | ☐ N / A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Professional Liability (Errors and Omissions) | | | TBA | 7/7/2010 | 7/7/2011 | Occurrence / Aggregate | $1,000,000 / $1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Insured Copy | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

ACORD 25 (2009/09)          © 1988-2009 ACORD CORPORATION

The ACORD name and logo are registered marks of ACORD

EXHIBIT
B

## EVANSTON INSURANCE COMPANY

| | |
|---|---|
| Policy No. | MG-831136 |
| Prev. No. | NEW |
| Prod. No. | 35850 |

### DECLARATIONS – SERVICE AND TECHNICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY

**Claims Made and Reported Coverage:** The coverage afforded by this policy is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company during the Policy Period or the Extended Reporting Period, if exercised, or within sixty (60) days after the expiration of the Policy Period or the Extended Reporting Period, if exercised.

**Notice:** This is a duty to defend policy. Additionally, this policy contains provisions that reduce the Limits of Liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless the policy is amended by endorsement. Please read the policy carefully.

1. NAMED INSURED: BROOKSIDE TITLE ESCROW, INC.

2. BUSINESS ADDRESS:
   7335 S. LEWIS, #300
   TULSA, OK 74136

3. POLICY PERIOD:   From July 7, 2010 to July 7, 2011
   12:01 A.M. Standard Time at address of Insured stated above

4. PROFESSIONAL SERVICES: Title Services (see item 1 of EIC 4360)

5. LIMITS OF LIABILITY:

   A. Each Claim:                                                         $ 1,000,000

   B. Policy Aggregate:                                                   $ 1,000,000

6. DEDUCTIBLE:

   Each Claim:                                                            $      5,000

7. RETROACTIVE DATE: July 7, 2010

8. RATE: Flat

9. PREMIUM FOR POLICY PERIOD:

   Minimum                                                               $   3,000.00
   Deposit                                                               $   3,000.00

10. PREMIUM FOR EXTENDED REPORTING PERIOD: 100% for 12 months; 150% for 24 months; or 200% for 36 months

11. ENDORSEMENTS ATTACHED AT POLICY INCEPTION:

    1. EIC 4115-01    25% Minimum Earned Premium Endorsement
    2. EIC 4360-02    Amendatory Endorsement Title and Escrow Operations



EXHIBIT
C

Policy No. MG-831136

12.   **NOTICES:**

Notices required to be provided to the Company under this policy shall be addressed to:

| CLAIM NOTICES: | ALL OTHER NOTICES: |
|---|---|
| Claims Service Center<br>MARKEL SERVICE, INCORPORATED<br>Ten Parkway North<br>Deerfield, Illinois 60015 | MARKEL NORTHEAST<br>310 Highway 35 South<br>Red Bank, NJ 07701 |
| Fax: (847) 572-6338<br>E-mail: newclaims@markelcorp.com<br>Phone: (847) 572-6000; (888) 502-3200 | Fax: (866) 730-1027<br>Phone: (800) 243-6869  (732) 224-0500 |

Policy Form: MG-20000 03/08
Dec: MG-10000 03/08
Date Printed: September 21, 2010

Page 2

Authorized Representative

## Markel's Designed Protection®
## Risk Management Resources For Specified Professions

Welcome to Markel's Designed Protection® leading edge Risk Management Resources.

The following risk management resources are available exclusively to our policyholders at our website www.markelshand.com at *no additional cost.*

HOW TO QUICKLY ACCESS RISK MANAGEMENT RESOURCES:

Step 1.    Go onto our website, www.markelshand.com.

Step 2.    In the left column of the markelshand.com home page, click on for Policyholders and then click on Risk Management Resources to get the Login screen.

Step 3.    In the box below the Terms for Access near the bottom of the Login screen enter your current policy number and click on "Agree and Submit to Access Risk Management Resources". You will be directed to Risk Management Resources related to your policy. Your policy number is MG-831136.

If you need technical assistance during the log in process, call (866) 932-2433.

Available Risk Management Resources include:

- **Designed Protection® Risk Management Telephone Hotline for Professional Service Providers**
  This confidential telephone hotline is staffed by a panel of risk management experts that are available to answer general risk management questions.
- **Designed Protection® for Professional Services Firms – Leading Edge Strategies for Effective Risk Management**
  This Guide provides information about principles of effective risk management including client satisfaction, billing practices and prompt and effective action in the event of an error or omission.
- **Top 10 Tips for Liability Loss Avoidance for Professional Services Providers**
  A concise, bullet point summary of 10 liability risk avoidance strategies.

Please check our website regularly as additional resources are added throughout the year.

03/09



# EVANSTON INSURANCE COMPANY

## Endorsement

| | |
|---|---|
| Named Insured:<br>BROOKSIDE TITLE ESCROW, INC. | Attached to and forming<br>a part of Policy No.:  MG-831136<br>Endorsement No.:  1<br>Effective Date of Endorsement:  July 7, 2010 |

### 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other provisions of the policy shall apply and remain unchanged.

_____
Authorized Representative

EIC 4115-01 2/03

 **EVANSTON INSURANCE COMPANY**

## Endorsement

| | |
|---|---|
| Named Insured:<br>BROOKSIDE TITLE ESCROW, INC. | Attached to and forming<br>a part of Policy No.:   MG-831136<br>Endorsement No.:   2<br>Effective Date of Endorsement:   July 7, 2010 |

### AMENDATORY ENDORSEMENT FOR TITLE AND ESCROW OPERATIONS

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.  Item 4. of the Declarations, Professional Services, is deleted and replaced with the following:

    4.  **Professional Services:**   Title Abstracter/Searcher, Title Insurance Agent, Rendering Opinions of Title Based Upon Abstracts Prepared by the Insured, Escrow Agent Pursuant to Written Escrow Instructions Accepted in Writing by the Insured, Closing Agent and Notary Public Services

2.  Section The Exclusions G., O. and X. are deleted and replaced with the following:

    G.  based upon or arising out of the insolvency, receivership, bankruptcy, liquidation or financial inability to pay, of any bank, savings and loan, banking firm, financial institution, lender, mortgage company, registered representative or broker/dealer of securities or commodities, insurance company, reinsurer, risk retention group or captive (or any other self-insurance plan or trust by whatsoever name), contractor, property developer, or real estate company, or any other individual, organization or other party;

    O.  based upon or arising out of any conversion, misappropriation, commingling, defalcation, theft, disappearance, insufficiency in the amount of escrow funds, monies, monetary proceeds, funds or property, or any other assets, securities, negotiable instruments or any other thing of value. This exclusion shall apply irrespective of which individual, party, or organization actually or allegedly committed or caused in whole or part the conversion, misappropriation, commingling, defalcation, theft, disappearance, insufficiency in amount;

    X.  based upon or arising out of acts and/or services as an insurance agent, insurance broker, investment adviser, Financial Planner, lawyer, accountant, registered representative or broker/dealer of securities or commodities, mortgage banker, mortgage broker, investment banker, construction adviser, architect, property developer or real estate agent or broker; or

EIC 4360-02 12/08                                    Page 1

 EVANSTON INSURANCE COMPANY

## Endorsement

3.   Section The Exclusions is amended by the addition of the following exclusions:

   Z.   based upon or arising out of disbursement of construction funds or any escrow open for a period of over six (6) months;

   AA.   based upon or arising out of any transaction involving a loan funded in whole or in part with the Insured's own funds or the funds of any organization controlled by, owned by, or commonly owned or affiliated with the Insured; or any servicing of loans by the Insured;

   BB.   based upon or arising out of notarized certification or acknowledgment of a signature without the physical appearance at the time of said notarization before such notary public as insured hereunder, of the person who is or claims to be the person signing said instrument; or

   CC.   based upon or arising out of the Real Estate Settlement Procedures Act (RESPA) or any similar state or local legislation.

All other provisions of the policy shall apply and remain unchanged.

_____
Authorized Representative

# Service and Technical Professions Professional Liability Insurance Policy

THIS IS A CLAIMS MADE AND REPORTED POLICY. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to the terms, conditions and limitations of this policy, the Company and the Insured agree as follows:

## THE INSURED

The unqualified word "Insured", either in the singular or plural, means:

A.   the Named Insured stated in Item 1. of the Declarations;

B.   any past or current partner, officer, director or shareholder of the Named Insured stated in Item 1. of the Declarations solely while acting on behalf of the Named Insured and within the scope of their duties as such;

C.   any past or current employee, including a leased employee, of the Named Insured stated in Item 1. of the Declarations solely while acting on behalf of the Named Insured and within the scope of their duties as such;

D.   if the Named Insured stated in Item 1. of the Declarations is a limited liability company, any past or current manager thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of such limited liability company and any past or current member, solely while acting on behalf of the Named Insured and within the scope of their duties as a member of such limited liability company;

E.   the heirs, executors, administrators, assigns and legal representatives of each Insured above in the event of death, incapacity or bankruptcy of such Insured, but only while acting within the scope of their duties as such on behalf of the Named Insured or the Named Insured's estate.

## INSURING AGREEMENT

A.   The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company during the Policy Period or the Extended Reporting Period, if exercised, or within sixty (60) days after the expiration date of the Policy Period or Extended Reporting Period, if exercised,

by reason of:

1.   a Wrongful Act; or

2.   a Personal Injury;

in the performance of Professional Services rendered or that should have been rendered by the Insured or by any person or organization for whose Wrongful Act or Personal Injury the Insured is legally responsible,

provided:

(i)   the Wrongful Act or Personal Injury happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations and before the end of the Policy Period; and

(ii)   prior to the effective date of this policy the Insured had no knowledge of such Wrongful Act or Personal Injury or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

## SUPPLEMENTARY PAYMENTS

A.  **Disciplinary Proceeding**: Upon satisfactory written proof of payment, the Company shall reimburse the Named Insured, up to twenty-five thousand dollars ($25,000) per Policy Period including the Extended Reporting Period, if exercised, for all reasonable and necessary legal fees and legal expenses incurred and paid by the Named Insured in response to a Disciplinary Proceeding first initiated during the Policy Period, or the Extended Reporting Period, if exercised,

provided:

1.  the Wrongful Act giving rise to the Disciplinary Proceeding happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations and before the end of the Policy Period; and

2.  prior to the effective date of this policy the Insured had no knowledge of such act or any fact, circumstance, situation or incident which would lead a reasonable person in the Insured's position to conclude that a Disciplinary Proceeding was likely.

The Insured shall give the Company written notice as stated in Item 12. of the Declarations as soon as practicable of any Disciplinary Proceeding first initiated against the Insured during the Policy Period or the Extended Reporting Period, if exercised. In any event, such Disciplinary Proceeding must be reported to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, within sixty (60) days after the end of the Policy Period or the Extended Reporting Period, if exercised.

No reimbursement pursuant to this Section shall be made for the Named Insured's payment of any taxes; criminal or civil fines, penalties or sanctions; registration or licensing fees; or any monetary judgment, award or settlement of any kind.

Reimbursement to the Named Insured pursuant to this Section shall be in addition to the Limits of Liability stated in Item 5. of the Declarations and shall not be subject to the Deductible.

## DEFINITIONS

A.  **Claim** means the Insured's receipt of:

1.  a written demand for money damages or remedial Professional Services involving this policy; or

2.  the service of suit or institution of arbitration proceedings against the Insured;

provided, however, Claim shall not include Disciplinary Proceeding.

B.  **Claim Expenses** means reasonable and necessary amounts incurred by the Company, or by the Insured with the prior written consent of the Company, in the defense of that portion of any Claim for which coverage is afforded under this policy, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with employees or officials of the Named Insured or employees or officials of the Company; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

C.  **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include: (1) punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured or other penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return, withdrawal, reduction or restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the Insured for services or goods.

D.  **Disciplinary Proceeding** means the Insured's receipt of any proceeding by a United States of America domiciled regulatory body, disciplinary board or governmental agency, any of which has

the authority to investigate charges of professional misconduct in the performance of Professional Services.

E.   **Electronic Communications System** means any wired, wireless, radio, electromagnetic, photo-optical or photo-electronic facility for the transmission of electronic communications; any electronic data processing systems or related electronic equipment for the storage of such communications; and any computer.

F.   **Financial Planner** means an investment professional who helps individuals or entities set and achieve their financial goals through investments, tax planning, asset allocation, risk management, retirement planning and estate planning, assisting in increasing net worth in furtherance of the individual's or entity's financial objectives.

G.   **Gross Revenues** means the gross amount of compensation received by the Named Insured for Professional Services during the Policy Period.

H.   **Personal Injury** means:

   1.   libel, slander or defamation;

   2.   invasion or infringement of the right of privacy or publicity;

   3.   malicious prosecution, abuse of process, false arrest or false imprisonment; or

   4.   humiliation or infliction of emotional distress;

   committed in the performance of Professional Services.

I.   **Pollutants** mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals, or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned, or reclaimed.

J.   **Professional Services** means those services stated in Item 4. of the Declarations rendered for others for a fee.

K.   **Policy Period** means the period from the inception date of this policy to the policy expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

L.   **Unauthorized Access** means a breach of the Insured's security measures, systems or procedures, or any intentional violation, interception, or use or misuse of the Insured's Electronic Communications System, whether or not for profit or gain, by any person, without the permission, knowledge or ratification of the Insured. Unauthorized Access also includes:

   1.   access to the Insured's Electronic Communications System that is with the Insured's permission where such permission is the result of fraud or deception;

   2.   use of the Insured's Electronic Communications System by a party authorized by the Insured to use such system, who does so for an unauthorized purpose;

   3.   the introduction of programs into the Insured's Electronic Communications System which contain fraudulent or destructive instructions or code; and

   4.   the threat to initiate or activate programs which contain fraudulent or destructive instructions or code into the Insured's Electronic Communications System for the purpose of extorting money or other valuable consideration from the Insured.

M.   **Wrongful Act** means any negligent act, error or omission in Professional Services.

## THE EXCLUSIONS

This policy does not apply to any Claim:

A.   based upon or arising out of the liability of others assumed by the Insured under any contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in

MG-20000 03/08                                    Page 3

the absence of the contract or agreement by reason of a Wrongful Act of the Insured in the performance of Professional Services;

B.  based upon or arising out of a Wrongful Act or Personal Injury committed by an organization, or a principal, partner, officer, director, trustee, member, manager or employee of an organization not stated in Item 1. of the Declarations;

C.  made against the Insured:

1.  by any person or organization or its subrogee, assignee, contractor, subcontractor, or parent organization, subsidiary, division or affiliated organization which was or is operated, managed, owned or otherwise controlled, whether directly or indirectly, or in whole or in part, by:

    (a)  any Insured or parent organization or any subsidiary, division or affiliated organization;

    (b)  any principal, partner, officer, director, member, manager, employee or shareholder of the Named Insured;

2.  by any principal, partner, officer, director, member, manager, employee or shareholder of an Insured or any subrogee or assignee of such person; or

3.  by or on behalf of any person or organization included in the definition of Insured;

D.  based upon or arising out of:

1.  any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law; or

2.  the Insured's activities as a fiduciary under the Employee Retirement Income Security Act of 1974, as amended, or similar provisions of any federal, state or local statute or common law;

E.  based upon or arising out of wrongful termination or other employment related practices;

F.  based upon or arising out of: (1) infringement or inducement of infringement of copyright, patent, trademark, service mark, trade name, or trade secret; or (2) unfair competition based upon infringement of copyright, patent, trademark, service mark, trade name or trade secret;

G.  based upon or arising out of the insolvency, receivership, bankruptcy, liquidation or financial inability to pay, of any bank, savings and loan, banking firm, registered representative or broker/dealer of securities or commodities, insurance company, reinsurer, risk retention group or captive (or any other self-insurance plan or trust by whatsoever name);

H.  based upon or arising out of any warranties or guarantees, express, implied or otherwise, or any cost estimates;

I.  based upon, arising out of, or in any way involving:

1.  conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to: (a) the strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another Insured or for the conduct of another Insured that constitutes a willful violation of any statute or regulation; or (b) Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation; or

2.  the gaining by any Insured of any profit, remuneration or advantage to which such Insured was not legally entitled; provided, however, this exclusion shall not apply to Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be any profit, remuneration or advantage to which such Insured was not legally entitled; provided, that any fact pertaining to any Insured shall not be imputed to any other Insured under this policy for the purpose of determining the applicability of this exclusion;

J.  based upon, arising out of, or in any way involving any Wrongful Act or Personal Injury or any fact, circumstance or situation that has been the subject of any notice given prior to the Policy Period

under any other policy of insurance or to any reinsurer, risk retention group or captive (or any other self-insurance plan or trust by whatsoever name) or insurance representative;

K.  based upon, arising out of, or in any way involving any:

    1.  actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of Pollutants; or

    2.  direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify, or neutralize Pollutants, or to pay for or contribute to the costs of undertaking such actions;

L.  based upon, arising out of, or in any way involving any actual or alleged bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property including loss of use resulting therefrom;

M.  based upon or arising out of any unlawful discrimination by any Insured;

N.  based upon or arising out of any acts and/or services performed by any Insured which is not licensed or certified to perform such acts and/or services if such licensing or certification is required by law;

O.  based upon or arising out of any conversion, misappropriation, commingling of or defalcation of funds or property;

P.  based upon or arising out of any inability or failure of any party to pay or collect monies or to collect or pay federal, state, county or local tax, including, but not limited to, income tax, sales tax or property tax;

Q.  based upon or arising out of the: (1) formation, syndication, operation, administration, reorganization and/or dissolution of any limited partnership, limited liability company, limited liability partnership or Real Estate Investment Trust (REIT); or (2) syndication of property;

R.  based upon or arising out of the: (1) preparation of a financial statement, if a compilation, review or audit; or (2) performance of any analytical analysis for the purpose of preparing a financial statement, if a compilation, review or audit;

S.  based upon or arising out of the failure to effect or maintain, or to advise of the need to effect or maintain, insurance, suretyship or bond;

T.  based upon or arising out of Unauthorized Access to the Insured's Electronic Communications System;

U.  based upon or arising out of a violation or alleged violation of the Securities Act of 1933, Securities Exchange Act of 1934, Investment Company Act of 1940, any state blue sky or securities law or similar state or federal statute or any amendments thereto, or any regulation or order issued pursuant to any of the foregoing statutes;

V.  1.  for the cost of recall, recovery, shipment, correction or reprinting caused by a defect or injurious condition in any advertisement or the cost of any services in connection therewith;

    2.  based upon or arising out of a mistake in advertised price or incorrect description of any article or commodity; alleged false, misleading or deceptive advertising or misrepresentation in advertising or products or services advertised by the Insured or others; or

    3.  based upon or arising out of games of chance or any other gaming or contests including lottery or sweepstakes;

W.  based upon or arising out of the performance of professional services with respect to the management of assets under a discretionary or nondiscretionary contract, whether written or oral;

X.  based upon or arising out of acts and/or services as an insurance agent, insurance broker, investment adviser, Financial Planner, lawyer, accountant, registered representative or broker/dealer of securities or commodities, mortgage banker, mortgage broker, investment banker,

independent third party escrow agent, construction adviser, architect, property developer or real estate agent or broker; or

Y.   based upon or arising out of the testing of welds, weld certification or the testing of structural steel.

## TERRITORY

The insurance afforded by this policy applies worldwide, provided the Claim is made in the United States of America, its territories or possessions, Puerto Rico or Canada.

## LIMITS OF LIABILITY

A.   **Limit of Liability - Each Claim:**  The total liability of the Company for the combined total of Damages and Claim Expenses for each Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated in Item 5.A. of the Declarations as applicable to Each Claim.

B.   **Limit of Liability – Policy Aggregate:**  Subject to the above Limits of Liability A., the total liability of the Company shall not exceed the Policy Aggregate Limit of Liability stated in Item 5.B. of the Declarations for all Damages and Claim Expenses arising out of all Claims first made against the Insured during the Policy Period and the Extended Reporting Period, if exercised.

C.   **Deductible:**  The Deductible amount stated in Item 6. of the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Deductible amount stated in Item 6. of the Declarations. The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

D.   **Multiple Insureds, Claims and Claimants:**  The inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 5. of the Declarations. More than one Claim arising out of a single Wrongful Act or Personal Injury or a series of related Wrongful Acts or Personal Injuries shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Wrongful Act or Personal Injury is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

A.   Defense, Investigation and Settlement of Claims:

1.   The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies pursuant to the following provisions:

(a) Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the Limits of Liability stated in Item 5. of the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the Limits of Liability stated in Item 5. of the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

(b) The Company shall select defense counsel; provided, however, that if the law of the state of the Named Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may

designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

(i) providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

(ii) providing any other reasonable information requested;

(iii) fully itemized billing on a periodic basis; and

(iv) cooperating with the Company and the Insured in resolving any discrepancies;

and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the Limits of Liability stated in Item 5. of the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.

B.   **Consent to Settlement:** The Company shall not settle any Claim without the prior written consent of the first Named Insured, but the Company shall have, at all times, the right to recommend a settlement of any Claim. If the first Named Insured shall refuse to settle such Claim pursuant to the Company's recommendations, then the Company's liability in regard to such Claim shall not exceed the amount for which the Claim could have been settled and the amount of any Claim Expenses incurred up to the date of the first Named Insured's refusal to settle the Claim. Such amounts are subject to the provisions of the Section Limits of Liability A. and B.

## CLAIMS

A.   **Claim Reporting Provision:** It is a condition precedent to coverage afforded by this policy that the Insured shall give to the Company written notice as stated in Item 12. of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised. In any event, such Claim must be reported to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, within sixty (60) days after the end of the Policy Period or the Extended Reporting Period, if exercised.

In the event a suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

B.   **Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific Wrongful Act or a Personal Injury which is reasonably expected to result in a Claim within the scope of coverage of this policy, then the Insured may provide written notice as stated in Item 12. of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Wrongful Act or Personal Injury shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1.   the description of the specific Wrongful Act or Personal Injury;

2.   the date on which such Wrongful Act or Personal Injury took place;

3.   the injury or damage which has or may result from such Wrongful Act or Personal Injury;

4.   the identity of any injured persons and/or organization subject to such injury or damage; and

5.   the circumstances by which the Insured first became aware of such Wrongful Act or Personal Injury.

Subject to the paragraph hereinabove, if during the Policy Period the Insured provides such written notice of a specific Wrongful Act or Personal Injury which is reasonably expected to result in a

Claim within the scope of coverage of this policy, the Company at its sole option, may investigate such specific Wrongful Act or Personal Injury. Such matter shall be subject to all terms, conditions and provisions in this policy as applicable to a Claim.

C.   **Assistance and Cooperation of the Insured:** The Insured shall cooperate with the Company and upon the Company's request, the Insured shall: (1) submit to examination and interview by a representative of the Company, under oath if required; (2) attend hearings, depositions and trials; (3) assist in effecting settlement, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits; and (4) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim; all without cost to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have.

The Insured shall not, with respect to any Claim covered under this policy, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without the Company's prior written consent, such consent not to be unreasonably withheld. Any costs and expenses incurred by the Insured prior to the Insured giving written notice of the Claim to the Company shall be borne by the Insured and will not constitute satisfaction of the Deductible.

D.   **False or Fraudulent Claims:** If any Insured shall commit fraud in proffering any Claim, this insurance shall become void as to such Insured from the date such fraudulent Claim is proffered.

## EXTENDED REPORTING PERIOD

A.   If the Named Insured nonrenews this policy or cancels this policy pursuant to Section Other Conditions A., or if the Company nonrenews this policy or cancels this policy pursuant to Section Other Conditions A., for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at the percentage stated in Item 10. of the Declarations of the adjusted annual premium for the Policy Period, subject to adjustment as per Section Other Conditions H., Premium and Audit, but in no event less than the percentage set forth in Item 10. of the Declarations of the annual minimum premium for the policy, to extend the coverage granted under this policy for the period of months stated in Item 10. of the Declaration, as elected by the Named Insured, to apply to:

   1.   Claims first made against the Insured during the period of months as elected, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any Wrongful Act or Personal Injury which happened on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this policy;

   2.   Disciplinary Proceedings first initiated against the Insured during the period of months as elected, and reported to the Company pursuant to Section Supplementary Payments A., Disciplinary Proceeding, following immediately upon the effective date of such cancellation or nonrenewal, for any Wrongful Act which happened on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this policy.

This extended period of coverage as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If, however, this policy is immediately succeeded by similar claims made insurance coverage on which the Retroactive Date is the same as or earlier than that stated in Item 7. of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium and/or Deductible and/or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

B.    As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid: (1) all Deductibles when due; (2) all premiums due for the Policy Period; and (3) all premium and deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement. The right to purchase the Extended Reporting Period shall terminate unless a written notice as stated in Item 12. of the Declarations of such election for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with payment of the additional deposit premium for the Extended Reporting Period. If such written notice of request and payment of additional premium for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

C.    The Named Insured shall pay any additional premium that may be due as a result of audit, promptly when due.

D.    In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

E.    The Extended Reporting Period shall not in any way increase the Limits of Liability stated in Item 5. of the Declarations.

## OTHER CONDITIONS

A.    Cancellation: This policy may be cancelled by the Named Insured on behalf of all Insureds by mailing to the Company written notice as stated in Item 12. of the Declarations stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the earned premium shall be computed at the customary short rate. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing to the Named Insured, at the address stated in Item 2. of the Declarations, written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Named Insured has failed to pay a premium and/or Deductible when due, including premium and/or deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement, this policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured, the Company or its underwriting manager shall be equivalent to mailing. If cancelled by the Company or its underwriting manager, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

B.    Representations:  By acceptance of this policy, the Insureds agree as follows:

1.    that the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

2.    that the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

goods, operations and/or premises, but the Company assumes no responsibility or duty by reason of such inspection or the omission thereof. The Insured agrees to provide appropriate personnel to assist the Company's representatives during such inspection without cost to the Company.

J.   **Action Against the Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms and conditions of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

K..   **Authorization:** By acceptance of this policy, the first person or organization named in Item 1. of the Declarations shall act on behalf of all Insureds with respect to the giving and receiving of all notices to and from the Company as provided herein: the exercising of the Extended Reporting Period; the cancellation of this policy in whole or part; the payment when due of premiums and Deductibles; the receiving of any return premiums that may become due under this policy; and the Insureds agree that such person or organization shall act on their behalf.

L.   **Service of Suit:** Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Midwest, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations by a duly authorized representative of the Company.

_Kathleen Anne Sturgeon_
                  Secretary

_Bernard Alhamus_
                  President

NUCLEAR ENERGY LIABILITY
EXCLUSION (BROAD FORM)

This exclusion modifies the provisions of this policy.

It is agreed that:

1. This policy does not apply:

   A. Under any Liability Coverage, to bodily injury or property damage

      (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

   C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

      (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

      (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

      (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2. As used in this exclusion:

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means source material, special nuclear material or by-product material;

   "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

   "nuclear facility" means

      (a) any nuclear reactor,

      (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

      (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25

grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

GLENNELLA P. DOSS
DOSS LAW OFFICES
LANSING BUSINESS PARK
720 EAST MARSHALL
TULSA, OK 74105

*To*

Tim N. Cheek, Esquire
Cheek Law Firm, PLLC
311 North Harvey Avenue
Oklahoma City, OK 73102







