**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | | |
|---|---|---|---|
| **GERRY G. THAMES,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| **v.** | ) | **Case No.** | **13-CV-425-PJC** |
| | ) | | |
| **EVANSTON INSURANCE CO.,** | ) | | |
| | ) | | |
| **Garnishee.** | ) | | |

<u>**OPINION AND ORDER**</u>

Before the Court for determination is whether coverage exists under a professional

liability policy issued by Evanston Insurance Company ("Evanston") for a confessed judgment

obtained by judgment-creditor Gerry G. Thames ("Thames") against Evanston's Named Insured,

Brookside Title and Escrow, Inc. ("Brookside").  The Court held a bench trial on June 1-2, 2015

("the Trial").  Both parties presented briefs, witnesses, and exhibits.  The Court has reviewed the

entire record in this garnishment proceeding, the Trial transcript and the parties' proposed

Amended Findings of Fact and Conclusions of Law.  In addition, the Court has reviewed

Oklahoma's applicable law.

The specific issues raised at the Trial were these: (1) Whether Evanston had notice of the

claim against Brookside; (2) Whether the policy at issue provided coverage for the claim; and;

(3) If there was coverage under the policy, whether there was an applicable policy exclusion.

After careful consideration of the record evidence, and for the reasons detailed below,

the Court finds that the professional liability policy excludes Thames' judgment against

Evanston and that Thames' claims are not covered.

I.      **Findings of Fact**

1. Thames is an individual with residence and domicile in the State of Oklahoma. Evanston is a corporation duly organized and existing under the laws of the State of Illinois with its principal place of business in Illinois.  This garnishment action was originally brought in the state court and removed to federal court.

2. At all times relevant herein, Evanston provided professional liability insurance coverage under a Service and Technical Professions Professional Liability Policy, No. MG-831136 ("the policy"), listing Brookside as its insured. At all time relevant herein, Debra J. Stockton ("Stockton") was the sole officer/director and employee of Brookside.  The policy's insuring period was from July 7, 2010 to July 7, 2011.  Brookside was an agent of First American Title Insurance Company ("First American").

3. In February 2011, Thames and Seller entered into a contract for the purchase of certain real property.  The contract noted the purchase price was $94,600.00. [Plaintiff's Exhibit 1].  The purchase was a cash transaction, self-funded from Thames' Roth IRA account at Sterling Trust Company in Waco, Texas. [Transcript 169: 1-7, Plaintiff's Ex. 12].  No mortgage lender was involved in the transaction.  Thames retained Brookside to provide closing and escrow services in connection with the real estate purchase.  The initial real estate closing date was set for April 18, 2011 but because the necessary documents were not prepared, closing was delayed. [Transcript p. 83:2-8; pp. 88:22-89:2].

4. On April 27, 2011, Thames delivered a wire transfer payment of $94,905.68 into Brookside's escrow account with First United Bank to be used in connection with the real estate transaction's closing. [Plaintiff's Ex. 8, Transcript, p. 9:13-16, p. 15:15-20].  A second closing

date of April 29, 2011 was set, but once again, closing did not occur. [Transcript, p. 9:19-25, pp. 89:17-90:2].

5. On May 5, 2011, Brookside was informed that all documents necessary for closing were prepared and signed and that Thames and the Seller were ready to proceed with closing. [Plaintiff's Ex. 9; Transcript, pp. 16:8-18:2, p. 86:9-16].  On that same date, the starting balance of Brookside's escrow account was $89,550.93, which would have been insufficient to cover Thames' purchase price of $94,600.00. [Defendant's Ex. S, p. EVST 0159; Transcript, pp. 205:22-206:10].

6. On, or about May 5, 2011, First American removed and obtained possession of Brookside's records and transaction files, including Thames' transaction file. [Transcript, pp. 12:20-13:24].

7.  On May 19, 2011, Linda Cathy Smith, an employee of First American, communicated to Thames that his transaction could not close because the Seller had not signed the documents and there was no insured closing letter provided. [Plaintiff's Ex. 13; Transcript, pp.95:14-96:1]. Thames' real estate closing never occurred. [Transcript, 176:1-2].

8. On May 20, 2011, Thames commenced an action against Brookside and Stockton in the District Court of Tulsa County (*Thames v. Brookside Title & Escrow Inc., et al.,* Case No. CV-2011-500), and filed an Application for an Emergency Ex Parte Temporary Restraining Order (the "TRO Action"). [Plaintiff' Ex. 15].  In the TRO Action, Thames sought 1) to prevent any further funds from being disbursed from Brookside's escrow account, 2) an order disbursing the balance of Brookside's escrow account to him as partial satisfaction for his loss, and 3) an order of accounting of Brookside's escrow account. [*Id.*]

3

9.  On June 1, 2001, the Tulsa County District Court entered an Order in the TRO Action based on stipulations between Thames, Brookside, and Stockton. [Plaintiff's Ex. 16]. Those stipulations included entering a permanent injunction in favor of Thames and awarding him all funds held in Brookside's accounts. [*Id.*].

10.  Stockton and Brookside, represented by Michael D. Parks, Esq., gave notice of the TRO action to Evanston[1] on June 3, 2011 via facsimile communication of the TRO Application and indicated there was a shortage of approximately $91,000 in escrow funds.  [Plaintiff's Ex. 27; Transcript, pp. 46:22-47:6].

11.  Mr. Parks spoke with Ms. Clara Celebuski, a senior claims examiner employed by Markel Service Inc., Evanston's claims service manager on June 8, 2011 and expressed the possibility that Stockton "misallocated or 'stole' the escrow funds." [Defendant's Ex. B; Transcript, p. 66:8-23].

12. On June 30, 2011, Thames initiated a new suit against Stockton and Brookside in the District Court of Tulsa County (*Thames v. Brookside Title & Escrow, Inc., et al.*, CJ-2011-3624) ("the Lawsuit"), alleging several causes of action, including breach of contract, breach of fiduciary duty and conversion, fraud, and civil conspiracy to intentionally commit fraud and convert Thames' funds. [Plaintiff's Ex. 17].

13.  On, or about, July 5, 2011, Mr. Parks received the summonses and copies of the Petition filed in the Lawsuit, and accepted service of the same on behalf of his clients, Brookside and Stockton.  [Plaintiff's Ex. 17, p. 14; Transcript, pp. 56:11-57:9, pp. 70:21-71:19].  Notice of

---

[1] The facsimile was sent to BusinessInsuranceNow, the producer/agent of Evanston. [Plaintiff's Ex. 27; Transcript, p. 46:4-11].

this new Lawsuit was not provided to Evanston. [Transcript, p. 57:17-21, p. 58:5-11, p. 64:3-6, p. 71:20-25].

14.   On July 18, 2011, Evanston issued a denial of coverage letter concerning the TRO Action. [Plaintiff's Ex. 38].   In that letter, Evanston stated the policy did not cover the TRO Action because it did not seek "Damages," as defined in the policy.  [*Id.* at p. 5].   Specifically, the letter noted that the "Damages" definition excluded "<u>the return, withdrawal, reduction or restitution or payment of any fees, profits or charges for services or consideration</u>. . . ." [*Id.* (emphasis in original)].   The denial letter also stated the claim was excluded under the policy because it was "<u>based upon or arising out of any conversion, misappropriation, commingling, defalcation, theft, disappearance, insufficiency in the amount of *escrow funds*</u>, . . . ." [*Id* at p. 6 (emphasis altered)].   The letter concluded by stating "please advise the undersigned immediately if you are aware of further or different facts that could have a bearing on our position regarding coverage of the captioned matter." [*Id*. at p. 7].

15. On July 12, 2012, Thames filed an Amended Petition joining First American as a defendant in the Lawsuit. [Plaintiff's Ex. 18].  Evanston was not advised of the Amended Petition. [Transcript p. 60:14-16; p. 64:3-6, p. 73:7-13; p. 74:2-7]

16.   On July 11, 2012, Stockton and her husband filed a voluntary petition for Chapter 7 bankruptcy relief in the U.S. Bankruptcy Court for the Northern District of Oklahoma, Case No. 12-11881-M. [Defendant's Exhibit F].  In that petition, Stockton listed Thames' Lawsuit as an unsecured, non-priority debt eligible for bankruptcy discharge. [*Id*. at p. 26].  On September 20, 2012, Thames initiated an adversary proceeding, No. 12-01071-M, in the bankruptcy proceeding, objecting to the Stocktons' request to discharge the Lawsuit and asserted that the Lawsuit arose

out of Stocktons' and Brookside's misappropriation of his escrow funds, precluding discharge under 11 U.S.C § 523(a)(4). [Defendant's Ex. G].

17. The Stocktons did not respond to Thames' allegations in the adversary proceeding and on December 5, 2012, Thames moved for default judgment, again recounting the allegations of the Lawsuit and asserting that the Stocktons, acting on behalf of Brookside, misappropriated Thames' escrow funds and used those funds for purposes unrelated to Thames' real estate transaction. [Defendant's Ex. H].  On December 12, 2012, Chief Judge Terrence L. Michael of the U.S. Bankruptcy Court for the Northern District of Oklahoma entered default judgment against the Stocktons in the amount of $89,444.19 and further excepted the same from bankruptcy discharge pursuant to 11 U.S.C. § 523(a)(4). [Defendant's Ex. I]

18.  On February 19, 2013, Brookside and Stockton filed an offer to confess judgment in the Lawsuit, wherein Brookside and Stockton offered to confess judgment in favor of Thames in the amount of $30,555.81, in addition to the bankruptcy default judgment previously registered in the Lawsuit on January 17, 2013. [Plaintiff's Ex. 19, Defendant's Ex. K].  That same day, Thames filed his acceptance of Brookside's and Stockton's offer to confess. [Defendant's  Ex. L]. Prior to making this offer to confess judgment, Evanston was not advised that such offer was being made or that Brookside and Stockton were contemplating confessing judgment in the Lawsuit. [Transcript, p. 73:11-12, p. 74:22-24].

19.  On February 26, 2013, judgment was entered in the Lawsuit for $30,555.81, as confessed and accepted by the parties, and for $89,444.19, as the pre-recorded judgment in the Bankruptcy case, for a total of $120,000.  [Plaintiff's Ex. 20].

20.  It was not until after Thames filed a Garnishment Affidavit in the Lawsuit, seeking

payment of the judgment from Evanston, that Evanston became aware of the Lawsuit. That

garnishment action is the subject of this case.

21.  When questioned at Trial regarding the use of Thames' escrow funds, Stockton

asserted the privilege against self-incrimination provided by the Fifth Amendment to the U.S.

Constitution. [Transcript, pp. 31:11-14, 35:10-13, 37:18-21, 38:5-14, 40:7-10].

22.  Relevant provisions of the policy at issue in this case, including its attached

endorsements, are as follows:

**INSURING AGREEMENT**
A.     The Company [Evanston] shall pay on behalf of the Insured [Brookside]
all sums in excess of the Deductible amount. . . which the Insured shall become
legally obligated to pay as Damages as a result of a Claim first made against the
Insured during the Policy Period . . . and reported to the Company during the
Policy Period. . .
     by reason of:
     1.       a Wrongful Act;. . .
     . . .
     in the performance of Professional Services rendered or that should have
been rendered by the Insured or by any person or organization for whose
Wrongful Act. . . the Insured is legally responsible. . . .

*     *     *

**DEFINITIONS**
A.     **Claim** means the Insured's receipt of:
1.  a written demand for money damages or remedial Professional Services
involving this policy; or
2.  the service of suit or institution of arbitration proceedings against the Insured;
     provided, however, Claim shall not include Disciplinary Proceeding.
. . .
J.     **Professional Services** means [Title Abstracter/Searcher, Title Insurance
Agent, Rendering Opinions of Title Based Upon Abstracts Prepared by the
Insured, Escrow Agent Pursuant to Written Escrow Instructions Accepted in
Writing by the Insured, Closing Agent and Notary Public Services].[1]

---

[1] The Policy's definition of Professional Services is the description of Professional Services set forth
in the Declarations.  However, the Amendatory Endorsement for Title and Escrow Operations,

. . .

M.      **Wrongful Act** means any negligent act, error or omission in Professional Services.

                              *     *     *

**THE EXCLUSIONS**

This policy does not apply to any Claim:

. . .

[*As amended by Amendatory Endorsement for Title and Escrow Operations*:]

O.      based upon or arising out of any conversion, misappropriation, commingling, defalcation, theft, disappearance, insufficiency in the amount of escrow funds, monies, monetary proceeds, funds or property, or any other asserts, securities, negotiable instruments or any other thing of value.  This exclusion shall apply irrespective of which individual, party, or organization actually or allegedly committed or caused in whole or in part the conversion, misappropriation, commingling, defalcation, theft, disappearance, insufficiency in amount;

                              *     *     *

**CLAIMS**

A.      **Claim Reporting Provision**:  It is a condition precedent to coverage afforded by this policy that the Insured shall give the Company written notice. . . as soon as practicable of any Claim first made against the Insured during the Policy Period. . . .

In the event a suit is brought against the Insured, the Insured shall immediately forward to [Evanston's Claims Service Center], on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

. . .

C.      **Assistance and Cooperation of the Insured**:. . . .

The Insured shall not, with respect to any Claim covered under this policy, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without the Company's prior written consent. . . . Any costs and expenses incurred by the Insured prior to

---

attached to the Policy, amends the description of Professional Services in the Declarations to list those services set forth in this bracketed portion.

the Insured giving written notice of the Claim to the Company shall be borne by
the Insured. . . .

\*     \*     \*

[Plaintiff's Ex. 25, pp. 7-16].

## II.     Applicable Law

Under Oklahoma law, "insurance policies are contracts interpreted as a matter of law."

*BP Am. Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005).  An insurance

contract should be construed according to the terms set out within the four corners of the

document. *First Am. Kickapoo Operations, L.L.C.* v. *Multimedia Games, Inc.*, 412 F.3d 1166,

1173 (10th Cir.2005); *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017, 1020 (Okla. 2002).

> Oklahoma's extant jurisprudence demarcates guidelines for ascribing meaning to
> an insurance policy's terms. Basically, an insurance policy is a contract. *When its
> terms are unambiguous and clear*, the employed language is accorded its
> ordinary, plain meaning and enforced so as to carry out the parties' intentions. In
> this process we are mindful that an insured and insurer are free to contract for that
> quantum of coverage which one is willing to extend and the other is willing to
> purchase. The parties are bound by the terms of their agreement and the Court
> will not undertake to rewrite the same nor to make for either party a better
> contract than the one which was executed.

*Bituminous Cas. Corp. v. Cowen Constr., Inc.*, 55 P.3d 1030, 1033 (Okla. 2002) (emphasis in

original) (footnotes omitted); *accord Roads West, Inc. v. Austin*, 91 P.3d 81, 88 (Okla.Civ.App.

2004) (If the terms of the contract are "unambiguous, clear and consistent, they are to be

accepted in their ordinary sense and enforced to carry out the expressed intention of the

parties.").  A court should not create an ambiguity in the policy by "using a forced or strained

construction, by taking a provision out of context, or by narrowly focusing on a provision."

*Wynn v. Avemco Ins. Co.*, 963 P.2d 572, 575 (Okla. 1998). A policy term or provision will be

considered ambiguous only if it susceptible to more than one reasonable interpretation. *Max True Plastering Co. v. U.S. Fidelity & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996).

### III.    Conclusions of Law[2]

1.  This Court previously analyzed and confirmed subject matter jurisdiction in this case. [Dkt. No. 26].  The parties in this action are completely diverse and the amount in controversy exceeds $75,000.00. Therefore subject matter jurisdiction is proper. 28 U.S.C. § 1332(a).

2.  **Notice**.  The provision of notice to an insurer under an insurance contract is a condition precedent to coverage.  *Assoc. of County Commnrs. of Okla. v. Natl. Am. Ins. Co.*, 116 P.3d 206, 211 (Okla.2005). The policy issued by Evanston was a "claims made" policy.  Under a claims made policy, "'coverage is only triggered when, during the policy period, an insured becomes aware of and notifies the insurer of either claims against the insured or occurrences that might give rise to such a claim.'" *State ex rel. Crawford v. Indem. Underwriters Ins. Co.*, 943 P.2d 1099, 1100 (Okla.Civ.App. 1997) (*quoting LaForge v. Am. Cas. Co. of Reading, Pa.*, 37 F.3d 580, 583 (10th Cir.1994)). It is the notice of the event that invokes coverage under the policy. *Id*.  Further, pursuant to Oklahoma law, an insurer must also demonstrate prejudice from lack of notice.  *Fox v. Natl. Savings Ins. Co.*, 424 P.2d 19, 25 (1967).

The parties do not dispute, and the Court agrees, that Evanston had notice of the TRO Action. Thames urges that notice of the TRO Action should serve as sufficient notice of the Lawsuit because the Lawsuit arose out of the same/similar facts and argues that had Evanston conducted a reasonable investigation, it could have discovered the subsequent Lawsuit.

_____

[2] Any Finding of Fact which is more appropriately characterized as a Conclusion of Law is incorporated herein.

10

Evanston acknowledges receipt of a Claim made by Brookside concerning the TRO Action but asserts that because Brookside failed to notify Evanston of the Lawsuit, coverage is precluded.

The policy's Claim Reporting Provision provides:

> In the event a suit is brought against [Brookside], [Brookside] **shall immediately forward** to [Evanston] **every** demand, notice, summons or other process received by him/her or by his/her representatives.

[Plaintiff's Ex. 25, p. 15 (emphasis added)]  The "every" language employed in this provision means that notice of the Lawsuit should have to be forwarded to Evanston regardless of any prior notice Evanston had received regarding the TRO Action.  Under Oklahoma law, failure to comply with such a notice provision precludes coverage if the insurer is prejudiced, even if the insurer was previously notified of the claim pre-suit.  *Indep. Sch. Dist. No. 1 of Tulsa County v. Jackson,* 608 P.2d 1153, 1155-56 (Okla. 1980) (although insurer was notified of claim and denied coverage, coverage was precluded by the insured's failure to notify insurer of post-denial lawsuit and insurer's loss of opportunity to defend).  Further, the "shall" language employed in this notice-of-suit provision indicates a mandatory action and is consistent with the "condition precedent" language set forth in the first paragraph of the policy's Claim Reporting Provision and the holding in *Jackson*.  In this case, while Evanston was aware of Thames' Claim via the TRO Action, the facts undisputedly show that no one gave any notice to Evanston regarding the Lawsuit, that no one sent Evanston the Petition filed in the Lawsuit or the First Amended Petition later filed in the Lawsuit, and that Evanston did not have any knowledge of the Lawsuit until this garnishment proceeding began. The Lawsuit gave rise to the judgment at issue in this garnishment action.  Evanston was clearly prejudiced in this case because Evanston did not have the opportunity to control Brookside's defense in the Lawsuit, nor was Evanston a party to the negotiations that led to Brookside's and Mrs. Stockton's confession to the judgment.

Relying upon *Utilities Ins. Co. v. Smith*, 129 F.2d 798 (10th Cir. 1942), Thames asserts that Evanston was not required to provide notice of the Lawsuit because it would have been "useless."  The Court finds that *Utilities Ins. Co.*, is distinguishable from the case at hand.  In that case, the insured was involved in a single-vehicle accident while driving a bus of college band members.  *Utilities Ins. Co.*, 129 F.2d at 799.  Smith and one other band member filed separate suits against the insured.  *Id*. at 802.  The Tenth Circuit found that the insurer was liable to Smith in the garnishment action under the express provisions of the policy and applicable statutory language.  *Id*.  In dicta, the Tenth Circuit noted that the insured "was not required to perform the useless act of giving further notice" of Smith's lawsuit where the insurer had previously disclaimed liability under the policy for the other band member's lawsuit.  *Id*. at 803.  The *Utilities Ins. Co.* case is distinguishable because the insurance policy (and state statute) expressly provided that the insurer was unconditionally obligated and that a violation of the policy by the insured did not affect an injured party's rights and did not relieve the insurer from liability.  129 F.2d at 800-01.  There is no such policy provision or applicable statute in this case.  Here, proper claim reporting and notice of every suit is a condition precedent to coverage under the policy.

Accordingly, the Court finds that the failure to give notice of the Lawsuit to Evanston and forward the Lawsuit's Petition or First Amended Petition to Evanston resulted in a failure to comply with a mandatory condition precedent in the Claim Reporting Provision, precluding coverage for the judgment in this garnishment action.

3.  **Policy Interpretation and Exclusion**s.  Although the Court finds that the failure of Brookside to give notice of the Lawsuit to Evanston precludes coverage, as an additional basis

for finding Thames' claims are not covered under the policy, an analysis of the policy's

Amended Exclusion O is provided.  Exclusion O states that Evanston will not cover any claim:

> **based upon or arising out of any conversion, misappropriation, commingling, defalcation, theft, disappearance, insufficiency in the amount of escrow funds**, monies, monetary proceeds, funds or property, or any other assets, securities, negotiable instruments or any other things of value.  This exclusion shall apply irrespective of which individual, party, or organization actually or allegedly committed or caused in whole or part the conversion, misappropriation, commingling, defalcation, theft, disappearance, insufficiency [*sic*] in amount[.]

[Plaintiff's Ex. 25, p. 7 (emphasis added)].

Thames argues that the Amended Exclusion O is ambiguous but the Court disagrees.

Under Oklahoma law, the "arising out of" language used in Amended Exclusion O is given a

broad reading.  Amended Exclusion O will apply to Thames' claims so long as there is some

causal connection between the excluded events listed and Thames' loss.  In other words, the

exclusion merely requires a "but for" connection, not legal proximate cause.  *Federal Ins. Co. v.

Tri-State Ins. Co.*, 157 F.3d 800, 804 (10th Cir. 1998); *see C.L. Frates & Co. v. Westchester Fire

Ins. Co.*, 728 F.3d 1187, 1189 (10th Cir. 2013) ("arising out of" language only requires "some

connection to the injury").

The remainder of the exclusion is rather straight-forward - the policy excludes coverage

for lack of funds, money, property, etc., regardless of the cause and regardless of who was at

fault for causing the lack thereof.  Evanston has sufficiently proven that Thames' claim arose out

of an insufficiency in the amount of Brookside's escrow funds.  Evidence adduced at Trial shows

that on May 5, 2011, the first day Thames' real estate transaction was ready to close, there were

insufficient funds in Brookside's escrow account to complete that closing.  But for the

insufficiency of those funds, Thames' transaction could have closed and Thames would not have

initiated the Lawsuit.  Thames' claims and Lawsuit therefore arise out of the escrow insufficiency.

The Court further concludes that Thames' Lawsuit, and the judgment entered thereon, arose out of a misappropriation of Thames' escrow funds.  In the adversary bankruptcy proceeding, Thames claimed Stockton misappropriated his deposit of funds.  The evidence shows Thames deposited his escrow funds via wire transfer, and the evidence also shows the balance of Brookside's escrow account depleting around the same time as Thames' losses, but none of the escrow account's funds were ever applied to Thames' real estate transaction.  The evidence also shows Brookside's counsel, Mr. Parks, advised Evanston's representative that Brookside and/or Stockton may have misallocated or stolen Thames' funds.  Finally, this evidence is compounded with Stockton's repeated assertion of the Fifth Amendment privilege against self-incrimination when questioned regarding the disappearance and use of Thames' funds.  The Court draws an adverse inference from Mrs. Stockton's assertion of the Fifth Amendment privilege and, when viewing such assertion along with the other evidence presented at trial, concludes Thames' funds were misappropriated.  Such misappropriation triggers Amended Exclusion O and precludes coverage.

The Court is not persuaded by Thames' attempts to construe Amended Exclusion O with other policy exclusions, namely Exclusion I and Amended Exclusion X.  The only exclusion Evanston relied upon in denying coverage in this action was Amended Exclusion O, rendering analysis of Exclusion I and Amended Exclusion X irrelevant.  Thames' attempt to construe these exclusions together to create an ambiguity is contrary to Oklahoma law, which states exclusions to a policy are read "seriatim," with each exclusion operating independently to limit the general

grant of coverage otherwise provided under the policy. *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 377 (Okla. 1991); *see also id.* at 376 (court will not force or strain construction of policy's language to create then construe ambiguity against insurer). Similarly, Thames' contention that Exclusion I's exceptions create an ambiguity and somehow generate coverage in Amended Exclusion O - which does not contain exceptions - is not well taken and is contrary to Oklahoma law. *Dodson,* 812 P.2d at 378 (analysis allowing exception in one exclusion to defeat operation of subsequent exclusions would be "absurd").

Additionally, the Court is not persuaded by Thames' contention that his claim avoids Amended Exclusion O because other non-excluded events contributed to his loss. The other causes of loss Thames suggests - failure to issue a closing protection letter, and delay in closing - are only relevant because of Thames' insufficient escrow funds.[3] Had a closing protection letter issued, it would only have operated to reimburse Thames for his lost funds which, in turn, would have allowed the closing; and, if closing occurred sooner, it could have been able to close because Thames' escrow funds were still in Brookside's escrow account. In other words, all of Thames' proffered theories still trace back to his missing escrow funds. Under the "arising out of" language of the Policy's Amended Exclusion O, so long as there is some connection between

---

[3] There is another problem with Thames' eleventh hour assertion that Stockton and/or Brookside were negligent in not issuing him a closing protection letter – Thames has failed to establish that either Stockton or Brookside had a duty to issue a closing protection letter to him. Closing protection letters are generally required by institutional lenders for protection in the event of errors at a real estate closing. [Transcript, pp. 38:18 - 39:8]. No lender was involved in the Thames transaction, because it was self-funded from Thames' Roth IRA account. Furthermore, there is no evidence that Thames ever requested a closing protection letter. [Transcript, p. 198:21-24]. Finally, Thames has produced no authority that under Oklahoma law a Closer has a legal duty to issue a closing protection letter whether it is requested or not. Absent some basis for a duty to issue a closing protection letter, and a breach of that duty, there is no negligent act that could, arguably, fall within the policy's coverage.

the escrow funds insufficiency and Thames' losses - and there is certainly at least some connection - Amended Exclusion O applies.

Based on the foregoing, the Court concludes that the Evanston policy does not provide coverage for the judgment, that Evanston has no duty to indemnify Brookside and Stockton for the judgment and Thames' claims embodied therein, and that Evanston therefore has no monies or property in its possession with which to satisfy Plaintiff Thames' claim of garnishment.

**DATED,** this 17th day of November, 2015.

Paul J. Cleary
United States Magistrate Judge